## Stephen D. Ryan, Appellee, v. Thomas E. McArdle, Appellant.

### Gen. No. 15,473.

CONTRACTS—*what incompetent to show, as not in force.* A contract between two parties capable of contracting, which was duly executed and delivered, cannot be affected by evidence of a verbal agreement made at the time of its execution that it should not go into effect until approved by a third party.

Appeal from the County Court of Cook county; the Hon. WILLIAM H. HINEBAUGH, Judge, presiding. Heard in this court at the March term, 1909. Affirmed. Opinion filed February 16, 1911.

RITSHER, MONTGOMERY, HART & ABBOTT, for appellant.

MCARDLE & MCARDLE, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

July 14, 1905, in the city of Dubuque, Iowa, the plaintiff and appellee, Ryan, and the defendant and appellant, McArdle, signed in duplicate the following document, one copy of which was taken and retained by Ryan and the other by McArdle:

"S. D. Ryan of the City of Dubuque, Iowa, for and in consideration of the agreement hereafter mentioned, leases to Thomas McArdle of Chicago, Illinois, the south warehouse and sufficient grounds for three oil storage tanks of not less than 8,000 gallons capacity each, situate on Block 27, Dubuque Harbor Company's Addition to the City of Dubuque, Iowa, for the term of five years from September 1st, 1905, with the privilege of five years additional at same rate. In consideration of said lease and for his services as Manager of said oil business, Thomas McArdle hereby agrees to bind himself, his heirs and assigns to pay the said S. D. Ryan the sum of $150 per month during the term of said lease, beginning September 1st, 1905. Should the said Thomas McArdle at any time during the term of said lease wish to dispense with the services of said S. D. Ryan, or should S. D. Ryan discontinue his services to the said Thomas McArdle or his assigns, the said Thomas McArdle agrees to pay S. D. Ryan, his heirs or assigns, the sum of $75 per month as rent for the property herein described during the term of said lease. S. D. Ryan *are* to furnish the office and storage tanks; Thomas McArdle to furnish oils, horses, wagons, etc., necessary for the business and to reimburse said S. D. Ryan for storage tanks in monthly installments to be agreed upon when cost of tanks is known.

                                    S. D. RYAN,
                                    THOS. E. MCARDLE.

HELLEN M. HAM,
          Witness.    July 14, 1905."

After the execution of this instrument McArdle left Dubuque and returned to Chicago, where he lived. He was at that time and up to the date of the trial was a salesman in the employ of the Fred G. Clark Company, which from the correspondence that afterward took place appears to have been a corporation with an office in Chicago. It dealt in oils.

After McArdle's return to Chicago there was some correspondence between him and the plaintiff, in relation to the proposed business to be established under the contract, a part of which only is in evidence. A letter of July 26, 1905, from McArdle to Ryan speaks of the advisable course to pursue in relation to the purchase of storage tanks, and other requisites for the business apparently expected to be carried on, and asks whether, in the event of his wishing to incorporate in Iowa, it would be necessary for the writer's name to appear in incorporation papers.

August 19, 1905, the defendant telegraphed to the plaintiff, apprising him that he would soon be in Dubuque, and from correspondence thereafter it is very evident that at the interview which took place when the plaintiff and defendant met at Dubuque the defendant categorically refused to go on with the business which had been contemplated in the agreement, and announced that he needed no oil storage tanks on the premises mentioned in the instrument, as he would not carry out the arrangement described in the contract.

The reason given by Mr. McArdle was thus expressed by him in a subsequent letter:

"I would not have entertained the proposition at all if I had not had in view the idea of being backed up by the Fred G. Clark Co. However on putting the proposition before the Fred G. Clark Co. they have turned same down absolutely and state that I cannot entertain this proposition while in their employ. Even though I was to sever my connection with the Fred G. Clark Co., the feeling that would then exist would not allow them to grant me the credit line which would be absolutely necessary for me to handle the Dubuque proposition.''

Further on in the same letter he says:

"I thought perhaps you would   *   *   *   cancel the agreement existing between yourselves and the writer. *   *   *  . If you see fit to enforce our agreement the outcome would simply be that you would throw the writer into bankruptcy."

The plaintiff refused to cancel the agreement, and it is evident that after the interview before mentioned, the relations between him and the defendant were anything but cordial. The plaintiff made some unavailing efforts to convince the Fred G. Clark Co. that they should take up and carry out the defendant's contract, and alleged his belief that McArdle had acted in the interest of the company whose employe he was. "I believe," he says in a letter of September 12th, "there is a personal obligation, a partnership in this deal, by which not the corporation but the individuals and the copartners are obligated."

On August 31, 1905, Ryan wired and wrote to McArdle that he delivered to him the warehouse and grounds according to the lease of July 14th, and awaited instructions. He did some little work personally in preparing the premises for the erection of oil tanks, and held himself ready, as he says, to enter into the service of McArdle had the latter decided to go on with the business. McArdle, however, proceeded no farther with it, and on January 6, 1906, Ryan leased the premises involved for three years to a third party, the Union Transfer Company, at a rental of $50 a month. He had been endeavoring to obtain such a tenant for them since it had become apparent that McArdle did not intend to go on with the proposed business nor to carry out his agreement.

October 30, 1906, the plaintiff, Ryan, brought suit in the County Court of Cook county against the defendant, McArdle, alleging in a special count of his declaration damages in the sum of $1,000 for the breach of the before described agreement of July 14, 1905, and adding the common counts thereto. Afterward the declaration was amended by the addition of other special

counts, demurrers to some of which were subsequently sustained. At the time of the trial of the cause, June 8, 1908, the pleadings outstanding consisted of a declaration containing the usual common money counts and two special counts on the contract.

The defendant's pleas were the general issue, want of consideration and failure of consideration.

The cause was submitted to a jury, who found a verdict for the plaintiff for $472.50, for which and costs, after a motion by the defendant for a new trial had been overruled, a judgment was rendered by the County Court. From this judgment an appeal was taken by the defendant to this court.

In this court, under the assignments of error, the defendant argues that the judgment should be reversed because the appellee was allowed by the court to answer questions which assumed that the instrument of July 14, 1905, was "a contract in force," and because evidence was excluded which was offered to prove (to quote from the record the offer of defendant's counsel at the trial) "That at the time of the signing of this contract it was stated by Mr. McArdle and assented to by Mr. Ryan, that this contract should not become effective until it was approved by the Fred G. Clarke Co., and that assent was never given, and therefore the contract was never delivered."

Complaint is also made of the refusal of an instruction tendered by the defendant, which apparently proceeded on the theory that evidence such as the preceding offer contemplated had been received, and directed the jury if they believed it to find for the defendant.

We do not think the court below erred in rejecting this "offer of proof" or in refusing the instruction. The instrument of July 14th was a contract between two parties capable of contracting, and was duly executed and delivered. There can be no serious dispute about that. Previous verbal conversations and negotiations and even conditions must be considered as merged in the instrument.

In Ryan v. Cooke, 68 Ill. App. 592, and 172 Ill. 302, the same contention was made concerning the refusal of an offer, in substantially the same terms, of evidence in relation to a delivered contract, and the Appellate and Supreme Courts held the Superior Court right in rejecting the offer. The opinion in the Supreme Court points out a distinction which must be considered as disposing, under the law of this State, of the theory of the defense in the case at bar. It says: "While it may be shown that a deed or contract *is not to be delivered* until a condition is performed, yet it cannot be shown by parol that actual delivery was made under an agreement that a condition should be performed and that the deed or contract should not be operative unless it was performed. In the one case the purpose of the proof is to show want of a legal delivery, but in the other case the effect of the proof is to contradict an instrument absolute on its face by showing, contrary to its terms, that it is not absolute but only conditional."

The instrument under discussion in Ryan v. Cooke was under seal, but neither in reason or by authority is there any difference in the rule in the case of unsealed contracts.

The other principal contention of the appellant relates to the damages assessed by the jury. We do not think that under the evidence the instructions tendered by the plaintiff in regard to loss for services were called for, but the instruction on the subject given at request of the defendant was explicit and clear and applied to the facts proven.

In any event, the verdict against the defendant was less than the accepted rule concerning his liability for rent under the undisputed facts disclosed by the record would have justified. Humiston, Keeling & Co. v. Wheeler, 175 Ill. 514; Marshall v. Grosse Clothing Co., 184 Ill. 421.

The judgment of the County Court is affirmed.

*Affirmed.*